No. 26-1823

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

JOHN MULLINS and THOMAS SUNDERLIN, individually and as a representative of a class of similarly situated persons, on behalf of the 401(k) Pension Plan,

*Plaintiffs-Appellees*,

v.

NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION and the INSURANCE AND FINANCIAL SERVICES COMMITTEE,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Virginia,
No. 1:25-CV-00994-MSN-IDD (Hon. Michael S. Nachmanoff)

**APPELLANTS' REDACTED FINAL REPLY BRIEF**

Christina L. Hennecken
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, D.C. 20036
(202) 346-4000

Nehama Hanoch
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

September 10, 2026

Jordan Bock
*Counsel of Record*
James O. Fleckner
Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
*jbock@goodwinlaw.com*

*Counsel for Appellants National Rural Electric Cooperative Association and the Insurance and Financial Services Committee*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Fourth Circuit Rule 26.1, Defendants-Appellants National Rural Electric Cooperative Association (NRECA) and the Insurance and Financial Services Committee state that:

- The Insurance and Financial Services Committee is a committee of NRECA.
- NRECA does not have a parent corporation, and no publicly held corporation owns more than 10% of its stock.
- NRECA is a trade association that has no publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding.

## TABLE OF CONTENTS


INTRODUCTION ....................................................................................1

ARGUMENT ..........................................................................................3

I. The class fails for lack of commonality and predominance. ..........................3

A. The district court failed to conduct any analysis of Rule 23's prerequisites.............................................................................4

B. There is no record evidence establishing predominance and commonality. .........................................................................6

1. Plaintiffs have failed to show that all class members suffered the same injury. .................................................................7

a. *Trauernicht* forecloses Plaintiffs' claims. ............................7

b. The Court should reject Plaintiffs' attempts to avoid *Trauernicht*. .........................................................11

2. Standing must be evaluated on an individualized basis. ...............14

3. Defendants' statute of limitations defense defeats class certification..........................................................................15

II. Plaintiffs have no meaningful response to the intra-class conflicts that plague the class. ............................................................................17

III. The named Plaintiffs have failed to establish Article III standing. ...............23

CONCLUSION ......................................................................................28

CERTIFICATE OF COMPLIANCE ............................................................30

CERTIFICATE OF SERVICE ...................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 5

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) .......... 25

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) .......... 18, 19

*Chavez v. Plan Benefit Servs., Inc.*,
957 F.3d 542 (5th Cir. 2020) .......... 4

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir. 2006) .......... 20

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) .......... 6

*Haley v. Teachers Insur. & Annuity Ass'n of Am.*,
54 F.4th 115 (2d Cir. 2022) .......... 16

*Knudsen v. MetLife Grp., Inc.*,
117 F.4th 570 (3d Cir. 2024) .......... 24, 25, 26

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 24

*Mr. Dee's Inc. v. Inmar, Inc.*,
127 F.4th 925 (4th Cir. 2025) .......... 14, 15

*Peters v. Aetna Inc.*,
2 F.4th 199 (4th Cir. 2021) .......... 25, 26, 27

*In re Principal U.S. Property Account ERISA Litig.*,
2013 WL 7218827 (S.D. Iowa Sept. 30, 2013) .......... 13

*Sam's Club v. NLRB*,
173 F.3d 233 (4th Cir. 1999) .......... 27

*Sharp Farms v. Speaks*,
917 F.3d 276 (4th Cir. 2019) ....................................................................... 18

*Spurlock v. Wexford Health Sources, Inc.*,
175 F.4th 232 (4th Cir. 2026) ..................................................................... 14

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) ......................................................................... 26, 27, 28

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
445 F.3d 311 (4th Cir. 2006) .................................................... 3, 15, 16, 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......................................................................................... 27

*Trauernicht v. Genworth Fin., Inc.*,
2024 WL 3835067 (E.D. Va. Aug. 15, 2024) ................................................. 12

*Trauernicht v. Genworth Financial Inc.*,
169 F.4th 459 (4th Cir. 2026) ........................................ 1, 6, 7, 8, 12, 13, 20

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) ......................................................................... 27

**Statutes**

29 U.S.C. § 1104 ........................................................................................... 27

29 U.S.C. § 1109(a) ....................................................................................... 25

# INTRODUCTION

Plaintiffs' Response stops their bid for class certification dead in its tracks. Plaintiffs are entitled to a Rule 23(b)(3) class only if they can prove through common evidence that every class member suffered the same injury (not merely experienced the same breach) and that intra-class conflicts do not plague the class. Plaintiffs' Response is long on speculation, but short on evidence that all class members suffered the same injury—not for the two named Plaintiffs, nor for any of the other nearly 100,000 absent class members. Plaintiffs even admit that their experts did not attempt to determine any individual class member's injury. After *Trauernicht v. Genworth Financial Inc.*, 169 F.4th 459 (4th Cir. 2026), it is not enough to say that plan-wide injury in a defined contribution plan necessarily means individual injury. This class cannot be certified.

Plaintiffs have no answer to the unrefuted evidence that over 99% of individual participants were charged *less* on a percentage-of-assets basis—the way the Plan actually assesses fees to individuals—than participants in any of their comparator plans. And they have no answer to the unrefuted evidence that even under their contrived per-participant metric, the majority of Plan participants—including the two named Plaintiffs—paid less than they would have under their own comparator plans. Instead, they ask the Court to ignore the record and accept their unsupported argument that if, as they allege, the Plan as a whole paid excessive fees,

then *ipso facto* every class member must have as well. They offer not a shred of support for this hypothesis in the record—not expert testimony, not historical experience, not even a citation to a white paper. As the examples presented by Plaintiffs' experts demonstrate, plan administrative fees can be structured and charged in any number of ways. The notion that any overall reduction in the Plan's fees would necessarily redound to the benefit of each employee of the 900 employers participating in the Plan—regardless of the individual's account balance, choice of investment, service utilization, size of employer, or any other metric—is purely speculative. Speculation cannot satisfy Rule 23(b)(3); only evidence can, and Plaintiffs do not have any.

Plaintiffs likewise have no meaningful response to the fatal intra-class conflicts. Under their own expert's approach, the named Plaintiffs and other low-balance participants are fundamentally at odds with participants with larger account balances. The same is true for participants working for small co-ops who depend on NRECA's extensive services; unlike the named Plaintiffs, these participants have an interest in ensuring that NRECA continues to provide all its high-touch services at cost. Plaintiffs brush these conflicts aside as "hypothetical," but they are anything but. Indeed, the named Plaintiffs expressly abandoned the remedy their expert suggested—a remedy that would have benefited those with larger accounts while

harming those with smaller accounts. That is a tell-tale sign of an irreconcilable conflict.

Ultimately, this Court has "stressed in case after case that it is *not the defendant* who bears the burden of showing that the proposed class *does not comply* with Rule 23, but that it *is the plaintiff* who bears the burden of showing that the class *does comply* with Rule 23." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006). Plaintiffs repeatedly ignore this directive. Like the plaintiffs in *Trauernicht*, they sidestep the common class-member injury requirement by resorting to common evidence of a supposed breach and plan-wide injury. And they wholly ignore the serious intra-class conflicts that exist here, just as the district court did below. With the burden on the proper party to prove that Rule 23 is satisfied, it is clear that class treatment is inappropriate here.

## ARGUMENT

### I. The class fails for lack of commonality and predominance.

Plaintiffs cannot establish commonality and predominance. The district court's failure to analyze Rule 23's requirements—a problem in and of itself—reflects that there is no support for Plaintiffs' position. And a rigorous review of the record reveals that individualized issues defeat certification under Rule 23(b)(3).

### A. The district court failed to conduct any analysis of Rule 23's prerequisites.

The record is clear: across two class-certification orders and hearings, the district court offered no analysis of predominance, adequacy, or typicality, despite Defendants' extensive arguments on these issues. And its "analysis" of commonality amounted to discounting the issue based on the erroneous assumption that individualized injury is irrelevant to class certification and relates only to the allocation of supposed damages. Plaintiffs barely even dispute the point; instead, they ask this Court to *assume* a rigorous analysis from the district court's naked conclusions.

On predominance, for example, Plaintiffs contend that the *parties* briefed and argued it, so the district court *must have* rigorously analyzed it. Response Br. 21. But party briefing is no answer to the *district court's* failure to address predominance. *See Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 551 (5th Cir. 2020) (rejecting attempt to supplant district court decision with the parties' submissions).[1] Plaintiffs also attempt to read-in a judicial predominance analysis based on the district court's cursory discussion of commonality and its citation of

[1] Defendants do not, as Plaintiffs suggest, take issue with whether the district court's reasoning appears in a hearing transcript or a written order. Response Br. 28 n.6. Defendants take issue with the district court's failure to meaningfully engage at either stage. As *Chavez* recognizes, Plaintiffs cannot paper over this deficiency by pointing to "how much material the parties submit[ted]." *Chavez*, 957 F.3d at 551.

"(b)(3)." Response Br. 22. But the court's statements confirm that its discussion did not encompass predominance. Opening Br. 30-31. At the supplemental hearing, the court found that *Trauernicht* did not change its "prior conclusion" on commonality. JA61. That "prior conclusion" was issued on a motion for certification under Rule 23(b)(1), and therefore cannot be used to meet the "far more demanding" standard of predominance. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-624 (1997). And while the court briefly mentioned superiority—a *different* (b)(3) factor—it nowhere mentioned predominance. JA61.

The same is true of adequacy and typicality, which the district court failed to address across two hearings. Plaintiffs respond that adequacy and typicality often overlap with commonality. Response Br. 23-24. In some cases, yes, but here Defendants identified intra-class conflicts based on employer size, service utilization, and participant account balance independent of their arguments on commonality and predominance. JA974-978. Yet the district court ignored the issue entirely.[2]

Ultimately, the problem is not the district court's failure to invoke a "particular verbal formula." Response Br. 25 (quoting *Shahriar v. Smith &*

---

[2] Plaintiffs suggest (Response Br. 24) that Defendants' counsel should have affirmatively raised adequacy and typicality at the post-*Trauernicht* hearing, but the court limited the supplemental hearing to "new argument[s] in light of *Trauernicht*"; it was not an opportunity "for reconsideration" of prior decisions. JA59.

*Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251-252 (2d Cir. 2011)). Rather, the absence of rigorous review allowed the district court to elide Plaintiffs' utter lack of evidence and rely on unsubstantiated attorney say-so. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 359 (4th Cir. 2014) (certification inadequate where the district court "glossed over" complications in evidentiary record). The court never engaged with Defendants' evidence or the gaping holes in Plaintiffs' record that preclude certification.

### B. There is no record evidence establishing predominance and commonality.

Any amount of review confirms that Plaintiffs cannot satisfy Rule 23. Opening Br. 35-49. Plaintiffs' arguments are unsubstantiated and directly contradict *Trauernicht*. As Plaintiffs themselves explain, their damages expert "calculate[d] the Plan's alleged excess administrative fees"—he *did not* "determine which participants were injured." Response Br. 35; *see also id.* at 11, 43. That is the problem. *Trauernicht* makes clear (repeatedly) that plaintiffs seeking class certification must *prove* that all class members "suffered the same injury." 169 F.4th at 472. Plaintiffs cannot point to any evidence proving this. Instead, they try to sidestep this fatal deficiency through the unsupported syllogism that "[i]f Plaintiffs prove that an imprudent fiduciary process caused the Plan to pay excessive administrative fees, every class member's account was charged more than it would have been had the fiduciary acted prudently." Response Br. 32-33. But there is *no*

evidence to support this central contention—not from Plaintiffs' experts, not from any fact testimony, and not from the "agreements, budgets, invoices, fiduciary records, [and] benchmarking evidence" they vaguely reference. *E.g.*, Response Br. 3. Plaintiffs have failed to carry their burden.

### 1. Plaintiffs have failed to show that all class members suffered the same injury.

#### *a.* Trauernicht *forecloses Plaintiffs' claims.*

This Court made clear in *Trauernicht* that a "defined contribution plan" is a "distinct context" from a "defined benefit plan." 169 F.4th at 468. For a defined contribution plan, a plan participant seeks monetary relief for any "losses sustained with respect to the plan assets *in his individual account*." *Id.* If a plan overpays for a service, but a specific participant's account is not affected, that participant has no injury. Because Plaintiffs are pursuing "individualized claims" with respect to "individual accounts in the plan," the district court must "conduct a rigorous analysis to determine whether members of the class suffered the same injury." *Id.* at 472. A participant in a defined-contribution plan cannot merely identify "the total loss" to a plan resulting from a breach and summarily conclude that all class members were injured; that is *Trauernicht*'s central holding. *Id.* But that is all Plaintiffs even claim to do here.

Plaintiffs admit that their damages expert, Scheinberg, "did not ... determine which participants were injured"—nor did he identify any method to determine

individual participant injury. Response Br. 35; *see also id.* at 11, 36, 43 (reiterating Plaintiffs' view that Scheinberg's median figure, the basis of his Plan-level opinion, does not "separate[] injured participants from uninjured participants"). Their point seems to be that Scheinberg identified only supposed injury *to the Plan*, not injury to individual participants. But that is precisely the problem. Scheinberg's report was the *only* injury-related evidence Plaintiffs presented. They do not have fact or expert evidence that any Plan-wide injury led to individual injuries for all—or even most—class members. They have therefore failed to satisfy *Trauernicht*.[3]

In place of evidence, Plaintiffs rely on attorney say-so: If the Plan paid too much, they say, then every participant must have paid too much. Response Br. 32. That argument is simple, but wrong. Plaintiffs repeatedly state this leap of logic as fact, but they cite nothing for it because they have no supporting evidence. *E.g.*, Response Br. 32-33 (asserting that "every class member's account was charged more than it would have been," with no accompanying cite); *id.* at 34 (similar). Even assuming that a fee-based injury to *the Plan* could be proven (or disproven) using a

---

[3] Plaintiffs have also failed to establish Plan-wide injury. Scheinberg's calculations fail to account for unreported indirect compensation (compensation that NRECA does not receive), and therefore significantly understate the comparators' fees. Opening Br. 17-18, 59-60. Plaintiffs argue that this criticism "challenge[s] the validity of Scheinberg's comparators," and therefore should be ignored at class certification. Response Br. 58-59 n.11. *Trauernicht* rejected that exact argument. 169 F.4th at 474 ("when determining injury," courts must "resolve whether" the challenged funds "could appropriately be compared to [the comparator] funds").

plan-to-plan comparative approach, Plaintiffs have no evidence that all participants were injured from the Plan's supposed overcharges. Thus, Plaintiffs' baseless argument regarding the apprentice lineman is just that—argument. Response Br. 34. They have identified nothing to suggest that the lineman who paid approximately $5 in administrative fees would have paid even less under a but-for, prudent fee arrangement. *Id.*; JA27.

Plaintiffs cannot simply assume that all class members would have paid less in fees under whatever structure the Plan might have adopted had it struck a different Plan-wide fee arrangement—particularly when the evidence affirmatively undermines their position. The record reveals at least three ways to assess administrative fees in a multiple-employer plan: (1) as a percentage of assets that varies based on the selected fund (NRECA's current approach); (2) as a percentage of assets that varies based on the size of the participating employers (the approach some Scheinberg comparators use) (JA1055-1057); and (3) as a fixed, per-participant fee (the approach advocated by Plaintiffs' other expert, Donaldson, and used by Scheinberg as well).[4] Defendants' retirement plan expert, Gissiner, shows that different arrangements would lead to differing fees and services across co-ops

[4] Other examples abound: an administrator could be compensated through indirect compensation from investment managers, individual fees for specific services, or paid entirely by sponsoring employers. JA1021-1022, JA1065-1067. Plaintiffs have likewise provided no evidence to suggest that all participants would pay less under any of these approaches either.

and participants. JA1064-1074. In particular, Gissiner confirms, and Plaintiffs do not contest, that the first two methods result in lower fees for nearly all participants. JA1059-1060.

That leaves the fixed, per-participant fee. For that alternative, Plaintiffs' own evidence directly undermines their theory, as Donaldson's report confirms that some Plan participants would see their fees *increase* if the Plan moved from an asset-based fee to a fixed, per-participant fee. JA865. Donaldson provided an example of two participants in the same plan, one with a $500,000 balance who pays $500 in fees and one with a $50,000 balance who pays $50 in fees. JA865. Under a fixed, per-participant approach, those participants would each pay $200 per year—meaning the participants with lower account balances (like the named Plaintiffs) would see their fees *increase*, not decrease, under a fixed, per-participant fee. JA865. The upshot: Participants with lower account balances are not injured by the Plan's current asset-based approach. JA865.

In response, Plaintiffs argue that they "never asserted a claim that NRECA was required to adopt" a fixed, per-participant fee structure. Response Br. 56. To start, that would mean Plaintiffs simply identified no alternative at all. Their disclaimer is also belied by the record. Donaldson asserted that "fiduciary best practices favor the use of a fixed, per-participant fee structure for plan administration." JA865. Plaintiffs attempt to brush aside this opinion on the basis

that he merely "discussed the advantages of fixed fees." Response Br. 56. That is wrong: This section in Donaldson's report is titled "NRECA *should have used* a fixed fee structure for administrative services rather than basis points." JA865 (capitalization altered, emphasis added).

In short, Plaintiffs have no evidence that lowering the Plan's overall fees would lead to a reduction in fees for every (or even most) Plan participants, and their naked speculation that *every* participant must have been injured cannot fill the evidentiary gap. Contrary to Plaintiffs' assertion (Response Br. 33-34), this is not a question of degree of resulting harm or allocation of damages—it is whether there is harm at all.

#### *b. The Court should reject Plaintiffs' attempts to avoid Trauernicht.*

Plaintiffs' other bid to defend the district court's decision is simply to sidestep *Trauernicht*. Plaintiffs argue that the *Trauernicht* class failed Rule 23(a)(2) because "[i]njury depended on each participant's investment decisions." Response Br. 32. As Plaintiffs describe *Trauernicht*, participants "selected different funds" and "invested different amounts," which resulted in different experiences and different injury for different participants. *Id.* Exactly. Here, the amount any participant pays in administrative fees likewise varies considerably based on whether he "selected different funds" and "invested different amounts"—as Donaldson himself demonstrates. JA584-585, JA1052-1053; Opening Br. 11-12. Each class member's

fee is a direct function of his account balance, driven by which investment(s) he chose and how much he chose to invest.[5] NRECA has never suggested that "all claims involving defined contribution plans are inherently individualized," Response Br. 30; rather, the record evidence for *this* multiple-employer plan establishes that injury must be evaluated individually.[6]

Plaintiffs likewise suggest that it is sufficient to identify a uniform theory of breach—namely, that "Plan-level decisions" resulted in excessive Plan-level administrative fees. Response Br. 32. But that was precisely the *Trauernicht* plaintiffs' argument, and this Court rejected it. *Trauernicht*, 169 F.4th at 462-463. There, class members were "automatically invested" in the same challenged funds (BlackRock LifePath Index Funds) because it was the plan's "qualified default investment alternative." *Trauernicht v. Genworth Fin., Inc.*, 2024 WL 3835067, at *1 (E.D. Va. Aug. 15, 2024). The plaintiffs argued that those funds—in which 95%

---

[5] Scheinberg acknowledges that participant balances here "are unusually high." JA800. That means that co-ops and Plan participants have voted with their pocketbooks and chose to invest more in this Plan than participants did, on average, in Scheinberg's comparator plans.

[6] A plan with a fixed-fee arrangement where all participants pay identical fees might be able to establish a common experience, and therefore common injury. That is hardly a "concession" (Response Br. 44), but rather a recognition that Rule 23 requires a case-by-case analysis. Here, that case-by-case analysis reflects that Plaintiffs have failed to prove that these Plan participants suffered from the same injury; indeed, they have failed to show that many participants were injured at all. *See supra*, pp. 7-11.

of participants invested—were imprudently chosen through a uniform, plan-wide fiduciary process. *Trauernicht*, 169 F.4th at 470. Despite that supposedly common breach, it did not follow that all *Trauernicht* participants suffered the same injury, and class certification was therefore inappropriate. *Id.* at 467-469; *see also In re Principal U.S. Property Account ERISA Litig.*, 2013 WL 7218827, at *31 (S.D. Iowa Sept. 30, 2013) (class certification is proper only if there is a common answer to question of "what effect did this alleged breach have on each class member") (emphasis removed). Precisely the same is true here—and even more so given that the 900 involved co-ops made independent decisions to adopt the Plan and may all use different Plan services for the same challenged fees. JA1035-1052.

At bottom, Plaintiffs' position would require abandoning *Trauernicht*. The plaintiffs in *Trauernicht* argued that the plan there would "be entitled to 'more net benefits … [if] Genworth followed Plaintiffs' preferred alternative course.'" Br. of Plaintiffs-Appellees, *Trauernicht v. Genworth Fin., Inc.*, 2025 WL 1099460, at *35 (4th Cir. Apr. 7, 2025) (alterations and omissions in original). According to the *Trauernicht* plaintiffs, that was sufficient to establish commonality for Rule 23(a)(2). *See id.* This Court roundly rejected that position. *See supra*, p. 7. But Plaintiffs here are proposing the same rule: Once Plaintiffs have (purportedly) established that the Plan paid more in administrative fees than it otherwise would have (thus reducing net benefits), that is sufficient to *assume* that all class members

suffered the same injury, and thus sufficient to establish commonality and predominance. If Plaintiffs could establish class certification solely with evidence of Plan-wide injury—and an unsupported assertion that Plan-wide injury means individual injury—then *Trauernicht* would have been decided the other way.

**2. Standing must be evaluated on an individualized basis.**

Plaintiffs' failure to show common injury defeats class treatment for a second, separate reason: Article III standing will require probing whether each participant suffered a cognizable injury.[7] Opening Br. 43-46. Plaintiffs' authority agrees. *See* Response Br. 33, 41 (discussing *Spurlock v. Wexford Health Sources, Inc.*, 175 F.4th 232, 248 (4th Cir. 2026)). In *Spurlock*, this Court determined that "[c]oncerns about potential uninjured, unnamed class members" are "appropriately addressed in the context of analyzing whether the proposed class meets Rule 23(b)(3)'s predominance requirement." 175 F.4th at 252. Where, as here, "a class includes some percentage of uninjured class members, then the proposed class may lack predominance." *Id.*; *see also, e.g.*, *Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 933 (4th Cir. 2025) (a "high share of class members with no demonstrable injury present[s] a predominance problem").

---

[7] As described *infra*, pp. 23-27, standing is not assumed under ERISA, and Plaintiffs must prove individual injury.

Plaintiffs attempt to distinguish *Mr. Dee's* (Response Br. 43-44), but it is even clearer here that Plaintiffs have failed to show predominance with respect to Article III standing. In *Mr. Dee's*, the plaintiffs' sole expert witness failed to provide evidence showing harm for "almost a third of class members." 127 F.4th at 933. Plaintiffs observe that Scheinberg's "model does not identify a group of uninjured members" (Response Br. 43), but that is because Scheinberg refuses to provide *any* evidence of individual class-member injury. Rather, Plaintiffs *assume* universal class-member injury rather than attempt to prove it. *See supra*, pp. 7-11. Plaintiffs thus fall far short of even the deficient showing from *Mr. Dee's*, while ignoring *Trauernicht*'s "same injury" requirement.

### 3. Defendants' statute of limitations defense defeats class certification.

Plaintiffs also have not carried their burden to show "that resolution of the statute of limitations defense on its merits may be accomplished on a class-wide basis." *Thorn*, 445 F.3d at 321-322 (emphasizing that "the record must affirmatively reveal" that the statute of limitations defense "presents common questions"). Defendants' statute of limitations defense does not rest on standard disclosures available for every plan. Rather, here, participants who received notice of the 2020 *Intravaia* settlement were uniquely positioned to have actual knowledge of their claims. Opening Br. 47-48; *see Intravaia v. NRECA*, No. 1:19-cv-00973 (E.D. Va. July 31, 2020) ("*Intravaia*"), ECF No. 95-2. Determining *which* of these

class members in fact possessed actual knowledge will require a participant-by-participant inquiry, in violation of the commonality and predominance requirements.

Plaintiffs' brief demonstrates as much: Plaintiffs cite Mullins and Sunderlin's deposition testimony to assert that they did not "recall[] receiving notice of the *Intravaia* settlement." Response Br. 47. "The very fact that [plaintiffs] ask [this Court] to inspect their individual deposition testimony … reveals that resolution of the statute of limitations defense will similarly require the trier of fact to examine the particular circumstances of each individual class member." *Thorn*, 445 F.3d at 323.

Plaintiffs respond that "Defendants offered no evidence that notice of the earlier claims actually revealed" various pieces of information, including "NRECA's excessive administrative fees or the fiduciary process challenged here." Response Br. 46-47. That puts the burden on the wrong party: "It is not enough … for [plaintiffs] to argue that [Defendants] failed to show that [their] statute of limitations defense presents individual issues." *Thorn*, 445 F.3d at 321. Rather, Plaintiffs must "affirmatively" show that the record allows for resolution of the statute of limitations on a class-wide basis. *Id.*; *cf. Haley v. Teachers Insur. & Annuity Ass'n of Am.*, 54 F.4th 115, 122 (2d Cir. 2022) (district court erred by not addressing affirmative defenses at class certification). Regardless, the *Intravaia* settlement notices directed participants to sufficient information to provide them with actual knowledge of the

facts giving rise to their claims here—in particular, the purported level of excessive fees. *See Intravaia*, ECF No. 95-2; JA620-657.

Ultimately, it is hardly surprising that this requirement defeats class certification: "Where the legal issue is similarly focused on the plaintiff's knowledge," this Court has "consistently held that individual hearings are required." *Thorn*, 445 F.3d at 320 (citing cases).

## II. Plaintiffs have no meaningful response to the intra-class conflicts that plague the class.

In addition to failing to show predominance and commonality, Plaintiffs have also not carried their burden on adequacy and typicality. As Defendants explained, the certified class suffers from at least two irreconcilable intra-class conflicts. Opening Br. 49-57. Plaintiffs do not meaningfully dispute either, attempting instead to brush them aside as hypothetical or speculative. The record confirms these conflicts are anything but.

1. *Account balances*. Because the named Plaintiffs had account balances well below the average participant's, they paid far less in administrative fees than the average participant. JA1088-1089; Opening Br. 50-52. They therefore have no incentive to argue that the Plan should adopt a fixed, per-participant fee structure, which would require them to pay *more* in administrative fees. *See supra*, pp. 10-11. By contrast, participants with larger account balances would pay less under a fixed-fee model, as Donaldson explains. Opening Br. 50-52. Because the named Plaintiffs

are at odds with Plan participants with larger account balances, they are fundamentally incapable of representing the proposed class.

This conflict is far from hypothetical. Plaintiffs provided only one evidence-backed alternative that the Plan might have adopted in their but-for world: According to Plaintiffs' expert, "NRECA *should have used* a fixed fee structure" as more consistent with "fiduciary best practices." JA865 (capitalization altered, emphasis added). But Plaintiffs abandoned that opinion, meaning they jettisoned the form of relief inconsistent with the named Plaintiffs' interests, regardless of the interests of other class members. *See supra*, pp. 10-11. This exposes a glaring intra-class conflict: The named Plaintiffs have no incentive to pursue Donaldson's alternative. *See Sharp Farms v. Speaks*, 917 F.3d 276, 297 (4th Cir. 2019) (brackets and citation omitted).

The "Supreme Court and this court have long interpreted the adequate representation requirement of Rule 23(a)(4) to preclude class certification" when there "is a conflict of interest between different groups of [class members] with respect to the appropriate relief." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (collecting cases). Applying this principle in *Broussard*, the Court rejected certification of a class in which there was a clear "schism … regarding the appropriate remedy for [the defendant's] alleged wrongdoing." *Id.* at 338. The named plaintiffs there had "abandon[ed] the only

remedy in which" a significant portion of the class "was interested." *Id.* at 339. That is precisely what happened here: The named Plaintiffs affirmatively disclaimed any remedy that would lead to NRECA's adoption of a fixed-fee model—a remedy that Donaldson says elsewhere "provides a more transparent, fair, and fiduciary-sound basis for ... paying plan expenses" (JA865), and which Scheinberg says "aligns with how administrative services are delivered" (JA800).

Plaintiffs attempt to paper over this schism by asserting that "[a]ll class members share an interest in determining whether the fiduciaries' process caused the Plan to pay excessive fees and restoring any resulting loss to the Plan." Response Br. 48. This argument fails. To start, it runs smack into *Broussard*. There, too, all of the class members were allegedly harmed by the same conduct: The plaintiffs alleged that Meineke's improper handling of franchise advertising led to a breach of the franchise agreement and a set of tort violations. 155 F.3d at 334. All class members had an interest in remedying this harm, but that did not mean their "remedial interests" were "aligned." *Id.* at 338. Plaintiffs argue that *Broussard* was distinguishable because the "[c]lass members "had different contracts, representations, reliance, and tolling issues." Response Br. 52. That is the same flawed reasoning that infects the entirety of Plaintiffs' approach: Defendants are not arguing that class members are differently situated with respect to breach. *See supra*,

pp. 12-13. Under *Trauernicht*, the question is whether they are similarly situated with respect to *injury*. *See Trauernicht*, 169 F.4th at 473.

At its foundation, Plaintiffs' "argument [is] made at an unacceptably general level." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). In *Deiter*, the named plaintiffs argued they were typical because all class members were injured by paying an excessive price for Microsoft licenses given Microsoft's monopolization of the relevant markets. *Id.* at 467. This Court disagreed. *Id.* "Examining typicality at a more directly relevant level," as the district court properly had, there were "meaningful differences between plaintiffs' claims and those of" specific Microsoft customers. *Id.* at 467-468. Because the absent class members had paid different amounts that were unique to their circumstances, evidence that the named plaintiffs had been overcharged "would hardly prove" that all class members had been overcharged. *Id.* at 468. Regardless of whether Plan participants here "contracted or negotiated separately with NRECA," Response Br. 52, the class members were not uniformly injured (or injured at all)—precisely what happened in *Deiter*.

2. *Co-op size.* The named Plaintiffs are also at odds with the many absent class members who worked for smaller employers. Opening Br. 53-57. As Defendants explained, smaller co-ops "benefit disproportionately" from NRECA's integrated service model. JA1087. From 2020 to 2022, [redacted] of all co-ops

electing to adopt the Plan had fewer than [redacted] participants enroll. JA1098. By contrast, the named Plaintiffs are employed by larger co-ops with hundreds of participants and in-house human resources and benefits personnel, who independently offer or would be able to replace the services NRECA provides. Opening Br. 53. The named Plaintiffs are therefore at odds with class members employed by smaller co-ops, who have an interest in preserving the level of services NRECA currently provides.

Notably, Plaintiffs never contest that there *are* conflicting interests between class members who want to preserve the current level of services and class members who have no problem with reductions in that area. Plaintiffs attempt to brush the conflict aside as a "hollow prediction," Response Br. 48, but they offer no evidence of how class treatment could avoid this conflict. And while Plaintiffs contend (at 49) that they are seeking only reduced fees and not reduced services, this completely ignores that NRECA is a not-for-profit entity that provides its administrative services *at cost*. JA722, JA733-747. Plaintiffs have no evidence to demonstrate how NRECA could absorb lower fees without also reducing services *from which it does not profit*.

Plaintiffs object that Defendants' expert "identified no evidence" that lowering the Plan's fees would lead to a reduction in services. Response Br. 49. But, again, Defendants do not bear the burden on class certification. *See supra*, p. 3.

Defendants identified a significant intra-class conflict, and it is *Plaintiffs* that bear the burden to show that employees of smaller co-ops are not at odds with the named Plaintiffs. The best they can muster is from the "Scope of Opinion" section in Scheinberg's report, explaining that he was asked to assess the reasonableness of the Plan's administrative costs "in light of services provided to the Plan." JA791. They ignore completely that Scheinberg disclaimed that very thing, testifying that he does not know what services his comparator plans provide. JA683-684; Opening Br. at 59. Plaintiffs do not provide any evidence that NRECA could in fact offer the same services for less money when they currently make no profit from those services. Nor do they have evidence of specific costs that could supposedly be cut. Regardless, Gissiner explained why a reduction in fees would lead to a reduction in services. JA1064-1074.

Plaintiffs take the same approach with respect to tiered pricing. As Defendants explained, Scheinberg used comparator plans with a tiered asset-based fee structure, meaning participants from larger employers with more plan assets benefited from lower expense ratios than participants from smaller employers with fewer plan assets. JA1069-1070; Opening Br. 54-55. If that structure controlled in Plaintiffs' but-for world, it could result in lower fees for the named Plaintiffs, but even higher fees for class members employed by smaller co-ops. Opening

Br. 54-55.[8] Plaintiffs argue that Scheinberg's contrived median-of-averages approach erases these intra-class conflicts. Response Br. 49; JA802. Not so: Regardless of metric, employees of small co-ops have a strong interest in not adopting a tiered structure (and their employers may have adopted the Plan precisely because it lacked that punitive fee structure), while the named Plaintiffs have precisely the opposite interest. This is yet one more irreconcilable conflict in the record that Plaintiffs and their experts never address.

## III. The named Plaintiffs have failed to establish Article III standing.

The only evidence in the record demonstrates that the named Plaintiffs' total administrative fees are well below the average fees paid by participants in their own expert's artificially depressed comparator plans. JA1090; Opening Br. 58-59. Further rebutting his claim of injury, Plaintiff Sunderlin was among the 0.3% of participants who used additional services from the Plan, both loan services and a self-directed brokerage account, at no extra cost. JA1090-1091. Plaintiffs have suffered no cognizable injury when they have adduced no evidence that they would have fared any better in their own but-for world.

---

[8] For example, one Scheinberg comparator, Vensure Employer Services, charged 4.6 times as much to participants from employers with under $500,000 in retirement assets. JA1057. The $5 in fees paid by an apprentice lineman would jump to $23 if he was employed by a small co-op using that comparator plan's structure, all else being equal.

Plaintiffs' responses are unavailing. Plaintiffs first argue that they have standing to recover restitution because they paid money for administrative services for which the Plan as a whole allegedly paid excessive fees. Response Br. 56-57.[9] That is the same flawed theory they rely on throughout; it simply *assumes* (but does not prove) individual injury from Plan injury. *See supra*, pp. 7-11. And even if *some* absent class members might be able to show *they* paid excessive fees and were thereby injured, the Supreme Court is unequivocal: a named plaintiff cannot assert that "injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).[10]

---

[9] Plaintiffs also hedge this argument, suggesting that "[b]ecause the Plan allocated its administrative fees among participants, a participant's charge *could* fall below the median and still include a portion of that excess." Response Br. 58-59 (emphasis added). "[S]peculative" injuries are, of course, insufficient to confer standing. *Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 582 (3d Cir. 2024).

[10] Plaintiffs argue that they presented additional evidence of injury through Donaldson's fiduciary process opinion and the statements of the Plan's independent fiduciary, non-party Newport, and its consultant, Callan. Response Br. 57. That is wrong: Plaintiffs' motion in support of class certification pointed *only* to Scheinberg's opinions to establish loss. JA770-772. Regardless, this new response fails several times over. Donaldson opined on breach, not injury, and identified that a fiduciary process would have led to use of a fixed fee structure, JA865—an opinion Plaintiffs have now abandoned, *see supra*, pp. 10-11, 18. And Newport's and Callan's reports—part of the Plan's thorough, multi-level fiduciary process—consistently approved NRECA's fees given NRECA's high level of services, thus *rebutting* any claim of even supposed Plan-wide injury. JA673, JA824-825, JA881-882; Opening Br. 16-17. Regardless, none of this newly identified "injury" evidence

*Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021), is not to the contrary. Response Br. 58. There the Court determined that the named plaintiff had established Article III injury because, absent breach, she "would have owed … $6.80 instead of $14.18." *Peters*, 2 F.4th at 219. As a result, "both [plaintiff] *and* the [p]lan would have owed somewhat less on this specific claim." *Id.* (emphasis added). That is precisely the evidence that is missing here.

Nor can Plaintiffs rely on disgorgement to avoid making *any* showing of individual financial injury. To start, Plaintiffs have no claim for disgorgement, which is available only to restore a fiduciary's "profits" to a plan. 29 U.S.C. § 1109(a). Plaintiffs have never disputed that NRECA provides its administrative services *at cost*, meaning Defendants do not make any profit. JA722, JA733-747. Plaintiffs cannot support standing based on a barebones request in their Complaint that Defendants must "disgorge all profits associated with their unlawful conduct." JA95; *see Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) ("presumption of truthfulness normally accorded a complaint's allegations does not apply" where Defendants raise a "factual challenge" to standing); *Knudsen*, 117 F.4th at 582 (speculative allegations are insufficient).

---

relates to individual injury, as *Trauernicht* requires. It therefore provides no help in establishing the named Plaintiffs' standing.

Even putting that aside, *Peters* does not allow Plaintiffs to bypass the required showing of individual injury. Response Br. 59. There "is no ERISA exception to Article III," and Plaintiffs' argument is incompatible with fundamental standing principles. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). As the Supreme Court recently emphasized in *Thole*, named plaintiffs must show that, if they "were to *win* this lawsuit," they would receive some benefit. *Id.* at 541. In other words, a plaintiff cannot stake standing on a breach of fiduciary duty where the participants themselves "have not suffered … any monetary losses." *Id.* at 542; *see Knudsen*, 117 F.4th at 581-582 (*Thole* requires a showing of "economic harm" to named plaintiffs).

While *Thole* involved a defined-benefit plan, that fact was relevant because the participants "receive a fixed payment each month," and therefore were not injured so long as they received the promised amount. 590 U.S. at 542-543. Nothing in *Thole* suggests that a plaintiff in a defined-contribution plan can establish standing without a showing of individual injury. To the contrary: The Supreme Court explained that a showing of investment mismanagement might be sufficient for standing in the defined-contribution context precisely because the participants could then make a showing of injury to their individual accounts. *See id.* at 540. Indeed, the Supreme Court reiterated that "plan participants possess no equitable or property

interest in the plan." *Id.* at 543 (citing, *e.g.*, *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), involving a defined-contribution plan).

The basis of the Court's holding in *Peters* was that a plaintiff could establish standing for equitable relief based on the invasion of a "legally protected interest"—there, a breach of fiduciary duty under 29 U.S.C. § 1104. 2 F.4th at 219. But as the Supreme Court confirmed after *Peters*, a statutory violation alone cannot provide the necessary injury for Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427-428 (2021). Here, then, the Court must still evaluate whether the named Plaintiffs have suffered a cognizable injury separate and apart from an alleged breach under § 1104. They have not.

Finally, the cited portion of *Peters* is *dicta*. The Court stated that, "*[e]ven if* [the plaintiff] failed to demonstrate a financial injury for standing purposes," she could pursue a claim for equitable relief based on her allegations of breach of fiduciary duty. 2 F.4th at 219 (emphasis added). This aspect of the decision is "not necessary" to the outcome, because the Court had already held that the plaintiff suffered a financial injury. *Sam's Club v. NLRB*, 173 F.3d 233, 246 n.13 (4th Cir. 1999); *see also Winsor v. Sequoia Benefits & Ins. Servs.*, 62 F.4th 517, 529 (9th Cir. 2023) (noting that "*Peters* also independently found Article III standing based on the plaintiffs' 'financial' injury").

In short, Plaintiffs "have no concrete stake in this lawsuit" and therefore "lack Article III standing," notwithstanding any alleged breach of fiduciary duty. *Thole*, 590 U.S. at 542. That straightforward proposition controls here.

* * *

Plaintiffs' overriding argument is that class-member injury here necessarily follows from Plan-wide injury. If the Plan would have paid less, they say, then everyone would have paid less. There is no evidence supporting that proposition. Instead, the record shows that (i) determining injury requires an individualized analysis of many factors, including actual fees incurred by each participant for services received, and (ii) the majority of participants—including Plaintiffs themselves—suffered no injury at all. Plaintiffs cannot stake their bid for class certification on attorney argument or a specious attempt to distinguish *Trauernicht*. This class cannot be certified.

## CONCLUSION

The Court should reverse the certification order below and remand with instructions to deny the motion for class certification.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Jordan Bock*

Jordan Bock
James O. Fleckner
Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Christina L. Hennecken
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, D.C. 20036
(202) 346-4000
chennecken@goodwinlaw.com

Nehama Hanoch
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

*Counsel for Appellants National Rural Electric Cooperative Association and the Insurance and Financial Services Committee*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,498 words, excluding the parts exempted by Rule 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it appears in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: September 10, 2026

*/s/ Jordan Bock*

Jordan Bock
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
*jbock@goodwinlaw.com*

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2026, I electronically filed the foregoing using the Court's CM/ECF system.

Dated: September 10, 2026

*/s/ Jordan Bock*

Jordan Bock
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
*jbock@goodwinlaw.com*

*Counsel for Appellants*